DANIEL SHAUGHNESSEY *vs.* ELLEN LEARY.

. Suffolk.   March 13, 1894. — October 17, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ.

*Easement — Prescription — Drain — User — Registry  Laws — Construction  of
Report.*

The acquisition of a prescriptive right to use a wooden drain across neighboring
land is not prevented by the laying of an earthen drain inside the wooden one.

The fact that a drain is laid at the joint expense of the owners of the dominant
and servient estates does not import, as matter of law, that the use thereafter is
permissive.

The acquisition of a prescriptive right to use a drain for the discharge of sink
water is not prevented by the use of it also for the discharge of water-closets
during a part of the twenty years.   On the other hand, if the prescriptive right
is only to use the drain, by gaining the former right the dominant owner does
not necessarily gain the latter.

The registry laws do not extinguish easements by prescription in favor of purchas-
ers without notice.

When the plaintiff alone appeals from a decree granting him an injunction, whether
the defendant can contest the right on which the injunction is founded, *quære.*

BILL IN EQUITY, to restrain the defendant from preventing the plaintiff from using and repairing a drain which ran through

the defendant's land. Trial in the Superior Court, before *Hammond,* J., who reported the case for the consideration of this court, in substance as follows.

By deed dated April 6, 1866, one Bowker conveyed to the plaintiff an estate in East Boston, described as follows: "Northwesterly by Lot 210, thirty-six feet (36 ft.) ; northeasterly by lot No. 1, on a plan hereinafter mentioned, seventeen feet, two and one half inches (17 ft. 2½ in.) ; southeasterly on lot No. 8, on said plan, thirty-six feet (36 ft.); and southwesterly by a common passageway ten feet (10 ft.) wide always to be kept open, seventeen feet, two and one half inches (17 ft. 2½ in.). The land above described is lot No. 9 on Noble's plan of subdivision of Lot 209 and part of Lot 101, Section 1, East Boston, recorded with Suffolk Deeds, April 4, 1866, with deeds given to John Kenney and Margaret Walsh. Together with the right and privilege in common with others legally entitled thereto to pass and repass on and over and through said ten-foot passageway and on, over, and through the twelve-foot passageway to Everett Street, and also of draining under said passageways in a drain to be built thereunder if any shall be so built, in common with the others thereto legally entitled; the grantee paying his proportionate part of constructing said drain and of keeping the said drain and passageways in good condition and repair, said passageways to remain forever open and unobstructed."

By deed of even date Bowker conveyed to one Cronin another estate in East Boston, described as follows: " Beginning at a point in the westerly line of a twelve-foot passageway which point is distant fifty-four feet southwesterly from Everett Street, thence the line runs by the westerly line of said passageway southwesterly thirty-six feet to the northerly line of a ten-foot passageway laid out in the rear of lots numbered 209 and 101, as shown on the plan hereinafter mentioned, then turning at a right angle and running northwesterly by the northerly line of said ten-foot passageway thirty-four feet eight and one half inches, then turning at a right angle and running northeasterly by lot numbered 7 on the plan hereinafter mentioned thirty-six feet, then turning and running southeasterly by lots numbered 3 and 4 on said last named plan thirty-four feet eight

and one half inches to the point of beginning. Being the lots numbered 5 and 6 on plan of subdivision of Lots 209 and 101 aforesaid, recorded with Suffolk Deeds, Liber 875, folio 37," followed by a provision similar to that in the deed to the plaintiff.

At the time of these conveyances, there was upon each lot a brick dwelling-house, the plaintiff's house being the north-westerly and Cronin's the southeasterly house in a block of three houses situated upon the northeasterly side of the ten-foot passageway mentioned in the deeds. On each lot in the rear of the house was an ordinary wooden privy, having a vault not connected with any drain, the vault being cleared out from time to time, as occasion required. There was also a wooden drain about a foot square, starting from the rear of the plaintiff's house, and running over the rear of each lot of the block, including the Cronin lot, in a line substantially parallel with said ten-foot passageway, and connecting with a private drain in the twelve-foot passageway mentioned in the Cronin deed, which last drain connected with the public sewer in Everett Street. The drain which thus ran in the rear of the block was used for the ordinary waste water of the kitchen in the plaintiff's house, but was not used for water-closet drainage, meaning thereby human urine and human excrement; and such use was continued by the plaintiff from the time of said conveyance to him until the year 1878, at which time, by order of the board of health, the privies and vaults were removed, and at the joint expense of the owners of the block, including the plaintiff and Cronin, a tight earthen drain about ten inches in diameter, placed about one foot below the surface of the ground, was substituted for the wooden drain, being laid inside thereof; and from that time until the earthen drain was interfered with by the defendant, as hereinafter stated, this wooden drain served no other purpose than as a covering for the new drain; and the new drain was used not only for the kind of drainage for which the wooden drain had been used, but also for the passage of water-closet drainage, water-closets having been constructed in each house and connected with the earthen drain at the time it was laid.

In June, 1888, Cronin by a warranty deed conveyed his lot

to the defendant, who, until shortly before the filing of the bill, was ignorant of the existence of the drain. As soon as she became aware of its existence, she denied the right of the plaintiff to use and maintain it, and under a claim of right stopped it up and otherwise injured it.

The judge made an interlocutory decree that " the plaintiff has the right of drainage of his waste water (excluding water-closet drainage) through the defendant's land as the drain now runs; that the plaintiff has no right to pass water-closet drainage through the defendant's land; and that forty-five days are to be given to the plaintiff to adjust his drain in accordance with his rights as herein declared ; and the cause is reserved for further action on this basis." The plaintiff appealed to this court.

The case was argued at the bar in March, 1894, and afterwards was submitted on the briefs to all the judges.

*W. B. Orcutt*, for the plaintiff.

*P. M. Keating*, for the defendant.

HOLMES, J. The fact set forth in the report warranted a finding that the plaintiff had acquired a right by prescription to use the drain for waste water, excluding water-closet drainage, as it had been used for more than twenty years. The wooden drain has been there from 1866. The laying of an earthen drain inside the wooden one, taken by itself, did not interrupt the running of time in favor of the plaintiff. The fact that this was done at joint expense has no greater effect as matter of law. The owner of the now servient tenement may have joined, as well because he yielded to a paramount claim, as on the footing of a license given by him and accepted by the plaintiff. Even if the continuance of the pipe itself was not a trespass or adverse, the use of it over the servient land by the plaintiff may have been adverse just as easily when the defendant's predecessor in title partly paid for it, as if the plaintiff had laid it wholly at his own expense.

The fact that the use of the drain was greater, in the character of the substances discharged into it, after 1878, does not prevent the gaining of an easement for the less burdensome use which was continued for twenty years. The same known or discoverable thing, the drain pipe, remained unchanged in

place during the whole time. A greater or more burdensome use of the drain did not make it a different drain, nor destroy the character of such use as was continuous. The fact that a pipe from the water-closet was connected with the drain, in addition to a pipe from a sink, did not change the nature of the use from the sink. That the servient owner submitted to a greater use for a part of the time is no reason why his submitting to a·less use for twenty years should not have its usual effect. And if the matter be approached from the side of the dominant owner, the feeling of right which grows out of habit certainly is no less because larger intrusions have been carried out successfully for a part of the time during which the less have been practised without dispute. *Baldwin* v. *Calkins*, 10 Wend. 167, 177. *Crossley* v. *Lightowler*, L. R. 2 Ch. 478, 481.

As the right was acquired before the defendant bought, it is not necessary to consider whether her ignorance of the existence of the drain when she took her deed would have affected the running of the necessary time. It did not put an end to the existing easement. The registry laws do not extinguish easements by prescription in favor of purchasers without notice. Pub. Sts. c. 120, § 4. See *Johnson* v *Knapp*, 146 Mass. 70, 73.

We have discussed the question whether the plaintiff has any right in the drain, as both parties have treated that question as open on the report. Whether it is so or not we express no opinion. *May* v. *Gates*, 137 Mass. 389. *Moors* v. *Washburn*, 159 Mass. 172, 176. *Harris* v. *Harris*, 153 Mass. 439.

We cannot say that the plaintiff has a prescriptive right to discharge his water-closet through the drain. As we have implied already, the judge may not have found that the drain was maintained adversely, but only that the plaintiff's use of it was adverse. If so, it is not necessary to consider whether, if a drain had been laid and maintained adversely, it would carry the right to use it for all possible purposes, without regard to the way in which it had been used in fact. If the easement is only a right to use, the right must be limited to use of the kind which has been made for twenty years.

*Decree affirmed.*